DETLEF C. MOHR, Appellant, *v.* J. C. PENNEY COMPANY, INC., Respondent, Appellant, UNITED STATES FIDELITY AND GUARANTY COMPANY, Impleaded Respondent, Appellant, and THE BANK OF AMERICA NATIONAL ASSOCIATION, Impleaded Respondent.

First Department, November 9, 1934.

*Chester B. McLaughlin* of counsel [*Benjamin J. Brown* with him on the brief; *McLaughlin & Stickles*, attorneys], for the plaintiff, appellant.

*John B. Butler, Jr.,* of counsel [*Caleb C. Curtis* with him on the brief; *Gwinn & Pell*, attorneys], for the respondent, appellant, J. C. Penney Company, Inc.

*William J. McArthur*, for the respondent, appellant, United States Fidelity and Guaranty Company.

*Alfred J. L'Heureux* of counsel [*Thomas A. Sully* with him on the brief; *Rumsey & Morgan*, attorneys], for the respondent, the Bank of America National Association.

GLENNON, J. This action was brought to recover the market value of a certificate for 100 shares of the common stock of the defendant J. C. Penney Company, Inc., upon the ground that it wrongfully canceled the certificate which had been issued to the plaintiff. The Bank of America National Association was impleaded as a defendant by the J. C. Penney Company, Inc., as it had guaranteed the alleged ink indorsement of plaintiff. The United States Fidelity and Guaranty Company was also impleaded as a defendant since it is the present holder of a new certificate issued in the name of Andrew R. Watland. The defendant J. C. Penney Company, Inc., asks judgment over against the impleaded defendants in the event that it is held liable to plaintiff. The United States Fidelity and Guaranty Company, which indemnified Hemphill, Noyes & Co. against loss, if it is held responsible, has asked judgment over against the Bank of America National Association, upon the theory that the J. C. Penney Company, Inc., relied upon its guaranty of the alleged signature of the plaintiff at the time it was received at its transfer office.

In November, 1929, the plaintiff, Detlef C. Mohr, a resident of North Dakota, purchased certain stock from A. Ellis & Company, Inc., a brokerage firm in New York city. As collateral security for the purchase price, he mailed to A. Ellis & Company, Inc., a certificate for 100 shares of the J. C. Penney Company, Inc., stock, Before so doing he indorsed the certificate in pencil, not in ink. on the line beneath the blank power of attorney. On November 27, 1929, Mohr paid his indebtedness to A. Ellis & Company, Inc., in full, but the certificate of stock of the J. C. Penney Company,

Inc., was never returned to him. In fact it was purchased on the floor of the New York Stock Exchange by Hemphill, Noyes & Co., a brokerage firm, for the account of the Atlantic National Bank of Jacksonville, Fla. The latter had ordered it for the account of Andrew R. Watland, one of its customers. Hemphill, Noyes & Co. delivered the certificate to the Guaranty Trust Company, which presented it to the Chemical Bank and Trust Company, the transfer agent of the J. C. Penney Company, Inc. The defendant Bank of America National Association admits that the certificate bore its guaranty of the alleged ink signature of Detlef C. Mohr. On December 26, 1929, the Chemical Bank and Trust Company, relying upon the guaranty of the Bank of America National Association, canceled the certificate and issued a new one in the name of Andrew R. Watland. At the time of the purchase the certificate bore only the forged indorsement of plaintiff's name, his pencil signature having been erased. There is no testimony in the record to show when Detlef C. Mohr's pencil signature was erased, or the circumstances which led up to the forgery of his name. The ink indorsement was witnessed by "Louis B. Spinelli." The name of the witness appears twice. Immediately above the signature of the witness appears the words "2nd signature." The reason why this was done does not appear in the record.

The court at Special Term dismissed plaintiff's complaint upon the theory that when he delivered the certificate of J. C. Penney Company, Inc., to A. Ellis & Company, Inc., with his pencil indorsement affixed thereto, he "divested himself of title in said certificate," and that by virtue of the indorsement he authorized A. Ellis & Company, Inc., "to sell and transfer said certificate." We are of the opinion that in so holding the court erred. It is not disputed that the ink indorsement on the back of the certificate is not in plaintiff's handwriting, nor is it in the handwriting of any person authorized to sign his name. The plaintiff, by placing his pencil indorsement on the certificate in blank, did not divest himself of title to the certificate, nor authorize A. Ellis & Company, Inc., to sell it. He mailed the certificate to A. Ellis & Company, Inc., as collateral security to guarantee the payment of his indebtedness to that company. Consequently, as against him, A. Ellis & Company, Inc., only acquired a lien to the extent of his indebtedness.

Respondent J. C. Penney Company, Inc., asserts that article VI of the Personal Property Law, as interpreted in the case of *Turnbull* v. *Longacre Bank* (249 N. Y. 159), makes a certificate of stock so indorsed a negotiable instrument. The authority relied on does not go to the extent of holding that a stock certificate bearing

a forged indorsement "possesses the attributes of a negotiable instrument." In this case the certificate was not transferred to a purchaser for value with the pencil indorsement in blank. The pencil indorsement had been erased and plaintiff's name forged at some time prior to the date of the purchase by Hemphill, Noyes & Co. The facts are not dissimilar from those which are to be found in *Colson* v. *Arnot* (57 N. Y. 253), except that negotiable bonds were there under consideration. Judge EARL said: "Suppose a thief should erase the name of the maker or drawer of a note or bill of exchange, and then forge the same signature, could he give a *bona fide* purchaser for value, title to the paper? I am clearly of opinion that he could not. The paper is not fair upon its face. There is a forgery, and although the purchaser may be ignorant of it, the law-merchant does not protect him against such ignorance. He must know at his peril that the signatures are genuine. We are asked, suppose the name of the payee, indorsed upon mercantile paper, fades out so as to be invisible, does it affect the negotiable character of the paper? Most certainly it does. The title and rights of the owner remain the same as before; but a thief could give no title to such a paper to any one, because he cannot be the apparent owner thereof, and there is nothing on the face of the paper to induce belief that he is the owner."

When the certificate was delivered to the J. C. Penney Company, Inc.'s transfer agent for cancellation, it did not bear the indorsement of the plaintiff, and consequently, it was subject to all outstanding equities in favor of the plaintiff. Therefore, J. C. Penney Company, Inc., must be held liable to plaintiff for the value of the certificate on the date of the transfer. In turn, the J. C. Penney Company, Inc., is entitled to a judgment over against the United States Fidelity and Guaranty Company canceling the new certificate. Likewise, both J. C. Penney Company, Inc., and the United States Fidelity and Guaranty Company are entitled to recover against Bank of America National Association on the ground that it guaranteed the forged ink indorsement on the certificate.

The judgment appealed from should, therefore, be reversed, with costs, and judgment directed in accordance with this opinion, with costs.

FINCH, P. J., MERRELL and TOWNLEY, JJ., concur; UNTERMYER, J., takes no part.

Judgment reversed, with costs, and judgment directed in accordance with opinion, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.