John H. Galloway, Jb., J.
Plaintiffs, Scovenna as trustee and National Bank of Westchester as successor trustee, under the last will and testament of Teresa Quinn Fohlin, have brought two separate actions against respectively American Telephone & Telegraph Co. and General Electric Company to recover shares of stock owned by them as trustees, which they claim the defendants have wrongfully cancelled and transferred on their corporate hooks without their authorization and which they have reissued to the third-party defendant Ira Haupt & Co., or in the alternative for the recovery of the value of the shares of stock.
The actions were originally commenced by Agnes K. Scovenna, as trustee and Blanche H. Fischbach as successor trustee. However, prior to trial before this court without a jury Fischbach resigned, and the National Bank of Westchester was substituted as successor trustee coplaintiff with Scovenna.
The defendants in the respective actions in turn commenced third-party actions against Charles Seligson as trustee of the estate of Ira Haupt & Co., a limited partnership, bankrupt. The two original actions and the two third-party actions were tried jointly.
Basically, in the first cause of action in each case, which alleges a single equitable action for wrongful cancellation of the stock belonging to the plaintiffs, plaintiffs contend that A.T.&T. and G.E., without authority or direction of the plaintiffs, transferred said stock from the names of the trustees to the name of Haupt & Co., and that the signatures on the assignments or stock powers purporting to be the signatures of Scovenna and Fischbach were forged.
In each case the defendant acted as its own transfer agent. In the case of A.T.&T. the alleged wrongful transfer involved 502 shares of its common capital stock on or about November 26, 1962, said stock having been then registered in the names of Scovenna and Fischbach as trustees. In the ease of G.E., the alleged wrongful transfer involved 300 shares of its common capital stock on or about November 21,1962, which likewise had *76 been registered at that time in the names of Scovenna and Fischbach as trustees.
The defendants’ answers admit the cancellation of the respective stock certificates after their presentation by the third-party defendant Ira Haupt & Co.
The defendants, in their third-party complaint against Haupt, alleged that the certificates were presented to them by Haupt for transfer to Haupt and that the signatures of the transferors (Scovenna and Fischbach, trustees) were guaranteed by Haupt and that, thereafter the defendants transferred the certificates on their respective books to Haupt based upon the said guarantee and presentation. Haupt, in each third-party answer, does not deny the foregoing allegations, but denies that if the plaintiffs recover against the defendants that the defendants and third-party plaintiffs are entitled to a recovery against Haupt as third-party defendant.
Plaintiffs claim that they were entitled, on the trial, to recover damages for the wrongful cancellation of the stocks ‘ ‘ to replace the lost principal of the trust, together with interest since the date of the conversion to make the life income beneficiary whole again.” They urge that the measure of damages is the highest sale price prevailing during the 60-day period after notice of conversion, or the value of the property on the date of conversion whichever is higher. (It is admitted by all parties that the converted stock was selling on the New York Stock Exchange at higher prices during the 60-day period following discovery of the conversion in July, 1963, than on the respective dates of conversion of the stocks involved).
The question to be here decided, under the pleadings, admissions, and the evidence adduced on the trial are: (1) are A.T.&T. and GKE. liable to the plaintiffs; (2) what is the proper basis of relief or measure of damages in behalf of the plaintiffs under the circumstances established by the proofs; and (3) if A.T.&T. and GKE. are liable to plaintiffs, is Haupt, in turn, liable to A.T.&T. and GKE.
1. On the first question: The proofs established that prior to July, 1961 Scovenna was in possession of 502 shares of A.T.&T. and 300 shares of Gr.E. registered in her name and in the name of David Oppenheim, as trustees under the will of Teresa Quinn Fohlin. Mr. Oppenheim had resigned as trustee and Mrs. Fischbach had been appointed by the Surrogate of Westchester County as successor trustee to him. Since Mrs. Scovenna was then planning to leave the country for Italy to join her husband for an indefinite period of time, she delivered the certificates of stock to Paul Fischbach, the trustees’ attorney, *77 for re-registration in the names of Scovenna and Fischbach as trustees in the place and stead of Scovenna and Oppenheim.
Thereafter, in or about March, 1962, Mr. Fischbach went to Turin, Italy where he met Mrs. Scovenna where she, at his request, signed stock powers to transfer the securities from the names of Oppenheim and Scovenna to Scovenna and Mrs. Fischbach. Thereafter Mrs. Scovenna wrote repeatedly from Italy to Mr. Fischbach inquiring as to whether the transfer of the stocks had been completed, but to these inquiries he replied evasively, although he told her that pressure of his practice had delayed his pursuit of the stock transfers, and that he was having some trouble with the companies regarding the transfers. However, she and Mr. and Mrs. Fischbach had developed a personal relationship as social friends, and on that basis Mrs. Scovenna had chosen Mr. Fischbach to serve as attorney for herself and cotrustee Mrs. Fischbach.
On June 5, 1962, the 300 shares of G. E. were transferred from the names of trustees Scovenna and Oppenheim to the names of trustees Scovenna and Blanche Fischbach. On November 21, 1962 said 300 shares were presented to G-.E. by Ira Haupt & Co. for transfer to the name of Ira Haupt & Co., and thereafter no further dividends were paid in the names of the trustees. There is no doubt, from the testimony of plaintiffs’ expert on handwriting and questioned documents, that the stock power presented with the certificates of G.E. bore the forged indorsements of Mrs. Scovenna and Mrs. Fischbach, and that those signatures were guaranteed by Ira Haupt & Co.
On May 3, 1962, 502 shares of A.T.&T. were transferred from the names of trustees Scovenna and Oppenheim to the names of trustees Scovenna and Blanche Fischbach. On November 26, 1962 said stock was presented by Ira Haupt & Co. to A.T.&T. for transfer to Ira Haupt & Co., together with a stock power attached thereto bearing the signatures of Scovenna and Fischbach, trustees which signatures were guaranteed by Ira Haupt & Co. It is likewise clear, from the testimony of plaintiffs’ expert on handwriting and questioned documents, that the trustees’ signatures on the stock power were forgeries.
Thereafter chocks, representing the proceeds of sales of the aforesaid A.T.&T. and G.E. stock negotiated by Ira Haupt & Co., were issued by Haupt in the names of Scovenna and Fischbach, trustees (whose signatures are indorsed on the reverse sides thereof and which plaintiffs’ expert testified were forgeries). None of the proceeds thereof was ever delivered to or received by said trustees. The third-party defendant admits the authenticity of the foregoing checks, and that the amounts *78 thereof were the proceeds of the cancellation, i.e., of the negotiated sales of the A.T.&T. & G.E. shares of stock.
Late in June of 1963, Mrs. Scovenna had received from A.T.&T., a check for dividends covering 14 shares of its stock, which were still in the possession of her predecessor cotrustee Mr. Oppenheim, and were in addition to the 502 shares of A.T.&T. which had been delivered to Mr. Fischbach for transfer to the successor cotrustees. She immediately wrote to Mr. Fischbach and to A.T.&T. She was advised by A.T.&T. under date of July 9, 1963 of the cancellation of the 502 shares in the names of the trustees, and of their transfer under date of November 26, 1962. She then wrote to G.E. which likewise advised her of the cancellation of the 300 shares in the names of the trustees, and of their transfer under date of November 21, 19-62.
We find that Mrs. Scovenna and Mrs. Fischbach as trustees never authorized or ratified the cancellation of the A.T.&T. and G.E. shares of stock registered in their names; that they did not authorize or ratify the subsequent sale of said shares to a third party, nor did they ever receive the proceeds of the sales of said stocks negotiated by Ira Haupt & Co. We also find that the signatures of the trustees appearing on the stock powers at the time of the cancellation of said shares of stock and the indorsements on the checks representing the proceeds of the sales of said shares of stock were forgeries. We also find that Mrs. Scovenna had with reasonable diligence followed up the matter of the transfers of the shares of stock with Mr. Fischbach and inquired of him as to the completion of his assignment in that respect, and that he on various occasions, though evasive, assured Mrs. Scovenna that all would be completed in due time.
The defendants urge, in support of their contention that plaintiffs are not entitled to recover against them, that during the period of March, 1962 to June, 1963 Mrs. Scovenna should have known that the trust’s securities had either disappeared or had been wrongfully taken, else her attorney would have written to her and she would have received the dividend checks to which she would have been entitled as beneficiary of the trust, and that she knew she could have written to the defendants themselves with respect to the status of the securities. Defendants urge that plaintiffs should therefore be estopped under common-law principles from asserting the alleged forgery. Defendants further contend that, under section 8-405 of the Uniform Commercial Code, where a security has been lost, apparently destroyed or wrongfully taken and the owner fails to notify the issuer of that fact within a reasonable time after *79 notice, and the issuer transfers the security before receiving-such notice, the owner is precluded from asserting- claims against the issuer in respect thereto, and the owner is estopped from asserting the ineffectiveness of a forged indorsement. They urge that Mrs. Scovenna had reason to know that her securities were stolen, and that she had a concomitant duty to notify the defendants thereof which she did not do, and thus she deprived them of their right to take action to apprehend the wrongdoer or to recover moneys received by the wrongdoers upon the sale of the stock. Defendants urge that these provisions of the Uniform Commercial Code are applicable to the plaintiffs herein, and bar plaintiffs ’ recovery.
With respect to these contentions of the defendants, we observe that Mrs. Scovenna had been a school teacher for much of her adult life, and she had gone to Italy in July of 1961 to join her husband Avho had been ÜAdng there for a number of years for reasons of health, and with Avhom she expected to remain for an indefinite period of time. She had developed a friendship with Mr. and Mrs. Fischbach prior to her departure, and in our opinion her decision to retain Mr. Fischbach as attorney for herself and cotrustee Mrs. Fischbach, was not rash or ill-considered. She realized that as a trustee she was not able to take the securities out of the country Avith her, and since she was desirous of having the certificates reregistered in her and Mrs. Fischbach’s names as trustees, it was reasonable for her to remove the securities from her safe-deposit box and to deliver them to Mr. Fischbach, Avith the request that he retain them in his own vault after completion of their re-registration in the trustees ’ names. Nor can we say that her confidence in Mr. Fischbach was misplaced or unreasonable, in view of the events which transpired between March, 1962 and June of 1963. She notified the defendants of all the information she had regarding the stolen securities within a reasonable time (in this instance promptly) after she kneAv or became aAvare that something had gone awry. We conclude that she and her co-trustee are not estopped at common law from recovery against these defendants.
We also conclude that they are not precluded from such recovery by virtue of the provisions of section 8-405 of the Uniform Commercial Code, Avhich, for the reasons hereinafter stated, we are of the opinion are not applicable to this case, although the “ reasonable notice of wrongful taking ” provisions thereof may be merely a codification of the common-law rule. With respect to the first question for decision, we conclude that A.T.&T. and Gr.B. are liable to the plaintiffs, and that the latter are entitled *80 to recover from the former for their wrongful cancellation of the plaintiffs’ certificates of stock in their respective companies. (Donaghue v. Di Giorgio Fruit Corp., 225 App. Div. 81; Hill v. American Tel. & Tel. Co., 37 N. Y. S. 2d 957; Henn Corporations [1961], p. 270; Pollock v. National Bank, 7 N. Y. 274, 277; Philipp v. Otis Elevator Co., 37 Misc 2d 150).
We turn to the second question for determination herein: What is the proper basis of relief or measure of plaintiffs’ damages recoverable against the defendants 1 Plaintiffs urge that they are entitled to elect, as against the return or replacement of the shares of stock, to recover the highest sales price prevailing during the 60-day period after notice of the wrongful cancellation, or the value of the securities on the date of such cancellation whichever is the higher. It is conceded that the highest sales price occurred with respect to both stocks within the 60 days following Mrs. Seovenna’s notice of the wrongful cancellation, namely during September, 1963, which was higher than on the dates of wrongful cancellation.
Defendants urge that section 8-404 of the Uniform Commercial Code is here applicable, and that plaintiffs are restricted to the delivery of new stock in place of the stock wrongfully can-celled; that they are not entitled to damages in lieu thereof unless the delivery of new stock would result in an overissue of authorized capital stock by the defendant corporations; that since new stock may be readily obtained by the defendants in the open market, such an overissue cannot result. They urge that the trust will be made whole if it receives a return of the stock, together with accrued dividends and interest on said dividends from the respective dividend dates. In our opinion the provisions of the Uniform Commercial Code relied upon are not applicable., in this case, the wrongful cancellation having occurred in November of 1962 and notice thereof having been received by Mrs. Seovenna in July of 1963, both dates prior to the effective date of the Uniform Commercial Code, September 27, 1964. Section 10-101 of the code provides that “this Act applies to transactions entered into and events occurring on and after the effective date specified in Section 10-105 of this Act.” Section 10-105 provides that the act shall take effect September 27, 1964. There is a presumption that a statute is prospective in its operation. (See American Laundry Mach. Co. v. Union Trust Co. of Rochester, 153 Misc. 55). Where rights and remedies have accrued, as in this instance, the courts are loath to take such rights away by subsequently enacted legislation. As was said in Matter of McDonnell (47 Misc 2d 967, 970): “ A pre-existing right or liability, whether or not it *81 is constitutionally protected from change, will not be affected by legislation, unless legislative intent to the contrary is obvious. The doubts, if any, will be resolved in favor of holding the subsequent statute to be prospective only [citing cases].” We conclude that the restrictive provisions of section 8-404 of the Uniform Commercial Code are inapplicable in the instant case.
Plaintiffs urge that they are entitled, under the law prevailing prior to the effective date of the Uniform Commercial Code, to elect between the taking of new shares of stock, or the value thereof measured by the highest sales price of the respective stocks within 60 days after discovery of the wrongful cancellation. We think otherwise, in the light of the essence or gravamen of the right of action here asserted in equity. Though there be elements of an action at law perceptible in the case, nevertheless, we are of the opinion that the right of action is essentially one in equity to recover, if possible, the shares of stock wrongfully cancelled. The action is not basically one in conversion where the remedy is recovery of the value of the personalty converted. It is more in the nature of an action in trover (which is an action by law) wherein the remedy is the return of the personalty or chattel wrongfully converted. Indeed plaintiffs’ initial demand of the defendants is that they replace and reissue to the trust the respective shares of A.T.&T. and Gr.E. stock, although they do pray in each instance in the alternative for the value thereof. We believe that the alternative relief of monetary damages in lieu of the return of the cancelled stock is not to be decreed in the absence of proof that similar stock is not available, or that, if available, it is so depleted in value as to render a return in kind valueless during the lapse of time between the wrongful cancellation, discovery and trial of the action.
As was said by the Court of Appeals in Pollock v. National Bank (7 N. Y. 274, 277, supra) in a situation very similar to the one at bar: “ I think the bank is bound to issue new certificates, and account for the dividends, or if, upon inquiry, it should be ascertained that it has no stock which it can transfer to the names of the complainants, then it should pay to them the value of the shares owned by them according to the prayer of the bill.” In Donaghue v. Di Giorgio Fruit Corp. (225 App. Div. 81, supra) which involved a similar wrongful cancellation and issuance of new certificates of corporate stock to third persons without authority of the original owners, the demand for judgment was for the delivery of the stock, or in case it could not be delivered, the value of the stock. There the plaintiffs elected to demand money judgments instead of the *82 corporate stock, since the value had fallen from $76 to $10 per share, and the court under the circumstances granted money judgments as though the complaint had been amended to change its demand for such relief. The court observed that the relief demanded by the amendment was not inconsistent with the original prayer, and the remedies not being inconsistent an election to take the one did not preclude the revoking of such election and demand for other relief.
We do not believe that the instant situation comes within that existing in Donaghue (supra), for if anything, the value of the two stocks involved has increased since the wrongful cancellation. At the same time we believe that since the essence of the action is one in equity, plaintiffs should not be allowed to gain a monetary profit on stock which had been held by the trustees for a number of years prior to its wrongful cancellation, and in view of Mrs. Seovenna’s testimony that she had no intention of disposing of the subject stock at the time she delivered it to their attorney Mr. Fischbach. Equity dictates a resolution of the problem that is equitable to both parties, since there is no proof of laches on the part of plaintiffs, nor of willful conduct on the part of defendants which cancelled the stock and transferred it to Haupt & Co. on forged indorsements. Nor do the proofs disclose that circumstances existing at the time the forged stock powers were presented to them were such as to immediately impose upon them the duty to inquire into the possibility of adverse claims to the stock.
Accordingly, we conclude that the plaintiffs will be made whole, within the requirements of equity, if they receive a return of A.T.&T. and G-. E. stocks, together with all accrued dividends not heretofore paid to plaintiffs, with interest on said dividends from the respective dividend payment dates. To such relief only are they entitled to judgment as against the defendants.
Third, and finally, we consider the right of the defendants to recover over against the third-party defendant Ira Haupt & Co. The proofs established that the stock certificates in the case at bar were presented to the defendant corporations by Ira Haupt & C'o. for transfer into the name of Haupt. The signatures of the trustees on the stock powers attached to the-stock certificates were all guaranteed by Haupt.
Christy, in his work, transfer of Stock (3d ed., vol. 1, § 248, p. 19:17), states: “If a corporation suffers loss by reason of a transfer of stock on a forged or unauthorized assignment, it has two sources of reimbursement. These two sources are the present person, firm, or bank which guaranteed the signa *83 ture to the assignment, and the person who presented the certificate for transfer. Both persons are bound to reimburse the corporation and one cannot contend that the corporation relied on the guaranty or warranty of the other in making the transfer. The duty of reimbursement by the signature guarantor is based on his guaranty, and that of the person presenting the stock for transfer on his warranty of the transfer.”
In our opinion the third-party defendant Haupt is liable to the defendants and the third-party plaintiffs under the signature guarantor criterion set forth by Christy. (See, also, Clarkson Home for Children v. Missouri, Kan. & Texas Ry. Co., 182 N. Y. 47; Mohr v. Penney Co., 242 App. Div. 385 and Schneider v. American Tel. & Tel. Co., 169 Misc. 939.)
We conclude that the defendants and third-party plaintiffs are entitled to judgment over against the third-party defendant Charles Seligson, as trustee of the estate of Ira Haupt & Co., for the return of the shares of stock of A.T.&T. and G.E. wrongfully cancelled and for all accrued dividends not heretofore paid to the trustees and for interest thereon from the respective dividend payment dates, to the extent as decreed against the defendants.
Plaintiffs’ allegation that, subsequent to the wrongful cancellation of the A.T.&T. stock and subsequent to the discovery thereof by Mrs. Scovenna, the A.T.&T. declared a 2-for-l stock split of said stock, effective May 28, 1964, by reason of which the trustees were entitled to ownership of 1,004 shares of said stock, stands admitted. Accordingly, the trustees are entitled to the return of that number of shares of A.T.&T. stock.