OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendants Pacific Telesis Group and SBC Communications Inc. have moved for an order pursuant to CPLR 3212 granting summary judgment dismissing plaintiffs amended complaint as to them. Plaintiff Melissa Smouha has cross-moved for an order granting summary judgment in favor of plaintiff and against Pacific Telesis and SBC.
The complaint alleges that prior to 1995, Ruth L. Samuels delivered to plaintiff Melissa Smouha, the granddaughter of Samuels and the mother of Marc, Jonathan and Nina Smouha, certain securities. The securities at issue on this motion are certificates representing 1,440 shares of common stock of Pacific Telesis Group which plaintiff alleges were inter vivos gifts intended to be used for the education of the Smouha children, but that Samuels reserved the income to herself during her lifetime. Ruth Samuels died on June 23, 1997. The complaint alleges that plaintiff subsequently attempted to surrender the certificates to Pacific Telesis through its registrar and transfer agents for purposes of re-registration into the name of plaintiff for the benefit of Marc, Jonathan and Nina, but the defendants notified plaintiff that they were unable to transfer the shares. No date has been established for such alleged communication and it has not been determined to whom or by whom such alleged communication was made on behalf of defendants.[1]
On their motion for summary judgment, Pacific Telesis and SBC contend that the facts which warrant judgment for defendants are undisputed, that is: the stock certificates in plaintiff s possession were never indorsed and were replaced at Samuels’ request on her representation that they had been lost; plaintiff never presented the original certificates for transfer of registration either before or after the replacement; and plaintiff *250 gave nothing of value in return for the certificates and is therefore not entitled to the protection of the UCC as a “protected purchaser.”
Plaintiff argues in her cross motion that the securities were an irrevocable gift to plaintiff from Ms. Samuels and that SBC is therefore bound to register transfer of ownership to plaintiff. Plaintiff further contends that the replacement of the securities pursuant to Ms. Samuels’ claim of loss dated May 30, 1997 was wrongful because Ms. Samuels’ weakened physical condition and her confusion and senility, as evidenced by hospital records dated August 11-16, 1995 and June 19-23, 1997, rendered her incompetent to revoke the gift of the securities and to execute an effective affidavit of lost certifícate. Plaintiff further argues that Ms. Samuels’ signature attesting that the Pacific Telesis stock certificates had been lost, while not contested as to authenticity, was ineffective because it was done under duress at the direction of Mr. Jack Feigin. With respect to defendants’ contention that the certificates were not presented, plaintiff maintains that she “received information” that the stock would not be re-registered even if the certificates were presented.
Documentation submitted by defendants in support of their motion includes the deposition testimony of plaintiff and her husband Joseph Smouha, the deposition of Anthony Da Cruz, a securities broker, as well as an affidavit from Mark Ringel, the records custodian of Hanauer & Co., the securities brokerage which employed Mr. Da Cruz, the EBT of Drucilla Cessac on behalf of SBC, the report of the guardian ad litem for Ms. Samuels’ grandchildren in the probate proceeding, a complaint filed in the Southern District of New York by Joseph Smouha against Ms. Samuels’ companion and life-interest legatee Jack Feigin, a decision on a motion to dismiss in that action, and a stipulation of settlement in the probate proceeding in New York County. Ms. Samuels’ medical records are annexed to plaintiffs motion.
In the absence of any clear proof that the certificates were actually presented for registration, this court finds that the plaintiff has failed to sustain her burden respecting her claim for damages for defendants’ “refusal to transfer” and such claims are dismissed. As to the plaintiffs demand for a judgment declaring that her children are the true owners of the subject securities and directing defendants to transfer ownership and issue new certificates, such demand for equitable relief *251 against defendant stock issuers is governed by article 8 of the UCC.[2]
Facts of the Case
According to the deposition testimony and the affidavits of Joseph and Melissa Smouha in support of plaintiffs cross motion, Ms. Samuels gave plaintiff the Pacific Telesis securities certificates during a visit to plaintiffs home in 1993, telling plaintiff that she should save them for her children’s college education. Annexed to defendants’ motion as exhibit F however is a copy of a transmittal form sent to Ms. Samuels from SBC Communications Inc., notifying her that Pacific Telesis Group had merged into a subsidiary of SBC Communications Inc., and that her shares of Pacific Telesis common stock would be converted to SBC stock upon return of the Pacific Telesis certificates in her possession. The transmittal form requests the shareholder to choose whether she wanted the new shares in the form of direct registration or in stock certificates. In her response dated May 30, 1997, Ms. Samuels checked the box marked “Stock Certificate.” She also checked a box at the bottom of the form indicating that the Pacific Telesis certificates had been lost. Her signature appears above the “Lost Certificate” checked box. The instructions on the form also required the shareholder to complete an affidavit of lost or destroyed certificates if the lost certificate box is checked. A blank affidavit of lost or destroyed certificates is annexed to exhibit F. There is no completed affidavit annexed to the motion, nor is there any evidence that an indemnity bond was filed. (See discussion of UCC 8-405, infra.) However, Ms. Samuels’ signature, guaranteed by transfer agent Morgan Guaranty Trust Co., appears below her “Special Transfer Instructions” to issue the new certificate to “Ruth L. Samuels 1995 Revocable Trust.”
Exhibits K and L of defendants’ motion are copies of SBC Communications Inc. certificate histories. Exhibit K reflects that Pacific Telesis certificates Nos. 010230 and 010231, representing 360 shares each, and certificate No. 010232 representing 720 shares were issued on June 16, 1997 to replace lost certificates No. 212486 issued February 15, 1984 for 360 *252 shares, No. 341312 issued June 9, 1986 for 360 shares and No. 439520 issued March 25, 1987 for 720 shares, and surrendered on June 16, 1997. Exhibit L indicates that certificate No. 516346 representing 1,053 shares of SBC Communications Inc. common stock was issued on June 16, 1997 in exchange for the aforementioned Pacific Telesis shares and surrendered on December 5, 1997. Copies of the original Pacific Telesis certificates issued February 15, 1984, June 9, 1986 and March 25, 1987 in the name of Ruth L. Samuels are annexed as exhibit E.
Ms. Samuels died on June 23, 1997, at the age of 86. She left a will designating her brother, Philip B. Lowy, and her friend, Jack B. Feigin, as executors. The will, dated June 14, 1995, provided that her residuary estate would be added to the corpus of an inter vivos trust simultaneously created under an agreement between herself as grantor and Jack Feigin and Stephen Yusem as trustees, that, upon her death, after certain distributions and payments, would be divided into two equal shares. One share was to be applied for the benefit of Jack B. Feigin for his lifetime, then disposed in accordance with the provisions for the distribution of the second equal share, which gave 50% to Ms. Samuels’ daughter, Virginia Kovner, 25% to Melissa Samuels Smouha, the plaintiff herein, 10% to Ms. Samuels’ grandson, Jason Samuels, and 15% held in trust for the life of her former daughter-in-law, Helaine Samuels, with the remainder to Jason.
Shortly after Ms. Samuels’ death, Joseph Smouha, plaintiff’s husband, brought an action in the Southern District of New York against Jack Feigin, alleging undue influence on Ruth Samuels for purposes of obtaining money and other assets from Ms. Samuels including the execution of the 1995 will. The complaint asserted that Mr. Feigin had exerted mental duress on Ms. Samuels, imprisoned her in her apartment and alienated her from plaintiff and plaintiff’s family. Mr. Smouha alleged that he and plaintiff had previously had a close familial relationship with Ms. Samuels, providing support and assistance with her daily living needs and assuming responsibility for many of her business affairs, and that Ms. Samuels had agreed to provide substantial recompense for such attention during her lifetime and in testamentary dispositions. The federal action was dismissed on October 24, 1997, for lack of subject matter jurisdiction. The June 14, 1995 will had been filed for probate in the New York County Surrogate’s Court.
In March 1999, Joseph Smouha filed objections to the probate of the June 14, 1995 will in the New York County Surrogate’s *253 Court, challenging the competence of Ruth Samuels and the qualifications of Jack Feigin to act as her executor and trustee.
The June 14, 1995 will was witnessed by three attorneys at the firm of Skadden, Arps, Slate, Meagher & Flora. The report of the guardian ad litem for the grandchildren concluded that the will had been properly executed and that there were no grounds for objection to the instrument. The guardian ad litem considered evidence as to Ms. Samuels’ competency at the time of execution of the will, including testimony by Ms. Samuels’ treating physician of 40 years that before going to Skadden Arps to execute her will, Ms. Samuels was examined and found to be alert and “competent in her thinking and in her judgment.” The attesting witnesses testified that they conversed with Ms. Samuels for approximately 20 minutes prior to the execution of the will and that she was lucid and clearly understood and agreed with the terms of the will. The guardian ad litem reported to the Surrogate’s Court that there was no evidence that Ms. Samuels lacked testamentary capacity, or that Jack Feigin exercised any undue influence on Ms. Samuels or prevented her from seeing her relatives. Moreover, the guardian ad litem noted that there was documentary evidence that the propounded will expressed Ms. Samuels’ testamentary intentions and was consistent with prior wills executed in 1963 and 1989. The guardian noted that only a will executed in 1992, drafted by plaintiffs counsel Jack Dweck, deviated from the “long-standing testamentary plan.” Addressing the very same hospital records submitted by plaintiff in support of her cross motion for summary judgment, the guardian ad litem concluded, upon the testimony of two treating physicians, that Ms. Samuels’ disorientation and confusion described therein were not observed at any other time. This court notes that the hospitalization of June 1997 immediately preceded Ms. Samuels’ death. Upon her admission on June 19, 1997, she was experiencing congestive heart failure and aortic stenosis but declined surgical intervention. The fact that treating physicians honored her directive suggests lucidity on that date. (See exhibit 2 to plaintiffs cross motion.) In any case, there is no evidence before this court that Ms. Samuels was not competent to execute the transmittal form, which she executed in a clear and apparently steady hand on May 30, 1997.
On April 13, 2000, Joseph and Melissa Smouha signed a stipulation and settlement agreement consenting to the admission to probate of the June 14, 1995 will, and agreeing to accept, in *254 lieu of any payments which might be due to Melissa or Joseph Smouha under the will, the sum of $725,000 and selected items of personal property from the estate. Under the settlement agreement, the Smouhas retained their rights to any inter vivos gifts they had received from Ms. Samuels. The estate’s tax returns indicate that the SBC shares were listed as estate property. Plaintiffs complaint herein was filed March 1, 2001.
Applicable Law
Article 8 of the Uniform Commercial Code governs the transfer of securities and the extent to which the issuer of securities is obligated to recognize the rights that a transferee may have acquired under other laws. (See, UCC 8-302, Comment 2; Nev Rev Stat § 104.8302.) It is defendants’ position that the provisions of the UCC, as codified under both Nevada and Delaware law, as well as that of New York, preclude recovery by plaintiff.
No challenge has been raised by defendants to plaintiffs claim of a valid inter vivos gift of the securities at issue and this court need not address that issue.[3] It is noted, however, that plaintiff questions the failure of defendants to implead the estate of Ruth Samuels which is now apparently the registered owner of the subject securities. Pursuant to UCC 8-405, if an issuer has replaced a purportedly lost or wrongfully taken certificate and the original certificate is then produced by a “protected purchaser,” the issuer must register the transfer of ownership to the “protected purchaser” even if such transfer will result in duplication of the shares. The issuer will then have recourse under the indemnity bond provided by the owner which requested the replacement (which defendants did not secure in this case) and may proceed to recover the replacement certificate from the person to whom it was improperly issued “except a protected purchaser.” (See UCC 8-405 [b].) Presumably, this is the basis of plaintiffs contention that defendants must register *255 her certificates and seek relief against the estate. See Scovenna v American Tel. & Tel. Co. (54 Misc 2d 74 [Sup Ct, Westchester County 1967]), cited by plaintiff. However, defendants contend plaintiff is not a protected purchaser and they are not therefore required to comply with her demands. This court finds that defendants are correct under the facts of this case.
(a)
Preliminarily, defendants contend that, because New York UCC 8-110 (a) (2) requires that the “local law of the issuer’s jurisdiction” governs this dispute regarding “the rights and duties of the issuer with respect to registration of transfer,” the laws of Nevada and Delaware must be applied since Nevada is the state of incorporation of Pacific Telesis and Delaware is the state of incorporation of SBC. Plaintiff argues that New York law applies pursuant to UCC 8-110 (c) which provides that “the local law of the jurisdiction in which a security certificate is located at the time of delivery governs whether an adverse claim can be asserted against a person to whom the security certificate is delivered.” An adverse claim, defined under UCC 8-102 (a) (1), means “a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset.” The complaint herein seeks registration by the issuer of a transfer of ownership. Plaintiff may be suggesting that her claim is adverse to the inclusion of the stock in the estate of Ruth Samuels; however, the estate is not a party to this action. In any event, all three states have adopted the UCC and the question of applicable law is therefore academic. Citation herein will be to New York law and parenthetically to the parallel Nevada statute.
(b)
UCC 8-207 (Nev Rev Stat § 104.8207) concerns the rights and duties of the issuer with respect to registered owners. The section provides that, prior to presentment of a certificated security for transfer of registration, the issuer may treat the registered owner as the person exclusively entitled to exercise all the rights and powers of an owner. Comment 1 to UCC 8-207 notes:
“The issuer may under this section make distributions of money or securities to the registered owners of securities without requiring further proof of *256 ownership . . . Any such distribution shall constitute a defense against a claim for the same distribution by a person, even if that person is in possession of the security certifícate and is a protected purchaser of the security.”
UCC 8-405 (Nev Rev Stat § 104.8405), captioned “Replacement of Lost, Destroyed or Wrongfully taken Security Certificate,” provides:
“(a) If an owner of a certificated security, whether in registered or bearer form, claims that the certificate has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificate if the owner:
“(1) so requests before the issuer has notice that the certificate has been acquired by a protected purchaser;
“(2) files with the issuer a sufficient indemnity bond; and
“(3) satisfies other reasonable requirements imposed by the issuer.”
Under these provisions, in the absence of any notice of a conflicting claim, defendants were justified, upon receiving Ms. Samuels’ duly-executed instruction of May 30, 1997, in reissuing the allegedly lost Pacific Telesis Group certificates to her and then substituting the new SBC shares in her name as the only rightful owner known to them. Until inquiry was made concerning the Pacific Telesis certificates held by the Smouhas subsequent to Ms. Samuels’ death, the certificates had not been presented to the issuer for registration of transfer of ownership from Ruth Samuels to another party. Defendants were therefore entitled to issue the replacement securities to Ms. Samuels as the registered owner and, pursuant to UCC 8-207 (Nev Rev Stat § 104.8207), such issuance is a defense even as against a person in possession of the security certificate.
Plaintiffs argument that the issuer did not require the filing of an indemnity bond is irrelevant in this case. Because the purpose of the indemnity bond is to protect the interests of the issuer, not those of third parties, it is within the discretion of the issuer to determine whether, and to what extent, a bond is necessary to protect against the risks involved in issuing a replacement. (8A Lawrence’s Anderson on the Uniform Commercial Code § 8-405:14R [3d ed rev 2004].) Defendants’ implicit waiver of the indemnity bond was not unreasonable in light of the fact that it was the issuer that had initiated the *257 communication to the registered owner and it was anticipated that new certificates for SBC shares would replace the lost certificates in any event. Plaintiff has no legitimate claim against defendants based upon the issuance of replacement certificates to Ms. Samuels.
(c)
UCC 8-401 (Nev Rev Stat § 104.8401) covers the duty of the issuer to register transfer, and directs: “If a certificated security in registered form is presented to an issuer with a request to register transfer . . . , the issuer shall register the transfer as requested” if seven preconditions are met. Those conditions, as applicable here, include eligibility of the person seeking registration of transfer to have the security registered in its name; an indorsement made by the appropriate person; reasonable assurance that the indorsement is genuine; and that the transfer is rightful or is to a protected purchaser. In this case, it is not disputed that the securities in plaintiffs possession contained no indorsement. Since there was no indorsement on the Pacific Telesis securities, the issuer would be under no duty to register transfer.[4]
While plaintiff argues that there was a wrongful registration of the shares in the name of the estate, an issuer is liable for wrongful registration under UCC 8-404 (Nev Rev Stat § 104.8404) only if the issuer has registered a transfer of a security to a person not entitled to it pursuant to an ineffective indorsement, or in contravention of a demand by the owner not to register transfer or a judicial directive, or in collusion with a wrongdoer. In this case, since the stock was part of a probated estate, the transfer of registration was pursuant to judicial directive and defendants cannot be held liable to plaintiff.
However, UCC 8-405 (b) provides: “If, after the issue of a new security certificate, [upon the representation that the original was lost or wrongfully taken], a protected purchaser of the original certificate presents it for registration of transfer, the issuer *258 shall register the transfer unless an overissue would result.” Without reaching defendant’s argument that there was no proper presentation for registration of transfer, the defendant issuers would not in any case have been obligated to register transfer to plaintiff pursuant to UCC 8-405 (b) upon such presentation because, not only was there no appropriate indorsement, but because plaintiff was not a “protected purchaser.” UCC 8-405 (Nev Rev Stat § 104.8405) is clear that after the issuance of a new security certificate to replace a lost certificate, there is no duty to register transfer upon presentation of the original certificate unless it is presented by a protected purchaser.
Plaintiff does fall within the definition of purchaser under UCC 1-201 (33) (Nev Rev Stat § 104.1201 [32]) which defines a “purchaser” as one who takes by purchase. UCC 1-201 (32) (Nev Rev Stat § 104.1201 [31]) provides that “purchase” includes taking by gift. A protected purchaser is defined in UCC 8-303 (Nev Rev Stat § 104.8303) as a purchaser of a security who “(1) gives value; (2) does not have notice of any adverse claim to the security; and (3) obtains control of the certificated or uncertificated security.”
The term “value” is defined in UCC 1-201 (44) (Nev Rev Stat § 104.1201 [45]). A person gives value if that person acquires rights in return for any consideration sufficient to support a simple contract. There is no contention that plaintiff gave “value” for the securities as defined in the UCC. When asked at her deposition whether she received the securities in exchange for anything of value, she responded “my love.” A donee of a gift is not protected as a purchaser for value. (7 Hawkland, Uniform Commercial Code Series § 8-302:03 [1998].)
With respect to “control,” UCC 8-106 (b) (Nev Rev Stat § 104.8106) provides that a purchaser has “control” of a certificated security in registered form if the certificated security is delivered to the purchaser and the certificate is registered to the purchaser or is indorsed to the purchaser or in blank by an effective indorsement. “Obtaining ‘control’ means that the purchaser has taken whatever steps are necessary, given the manner in which the securities are held, to place itself in a position where it can have the securities sold, without further action by the owner.” (UCC 8-106, Comment 1.) The securities at issue were not indorsed to plaintiff nor were they indorsed in blank; therefore, plaintiff, who was not the registered owner, was not in a position to sell or transfer the securities and did *259 not have control of the certificates. Clearly, plaintiff does not fall within the definition of “protected purchaser” and, under the circumstances, the defendant issuers are not under an obligation to honor the original certificates. There is no right to registration of transfer to an ordinary unprotected purchaser after a replacement security has been issued. The ordinary purchaser is relegated to pursuing the warranty remedy against his or her transferor. (8A Lawrence’s Anderson on the Uniform Commercial Code § 8-405:20R [3d ed 1996].)
It is well established that the proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to eliminate any material issues of fact from the case. (Winegrad, v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) Once the moving party makes a prima facie showing of entitlement to judgment as a matter of law, the opponent of a motion for summary judgment is required to present evidentiary proof in admissible form sufficient to establish an unresolved material issue of fact which can be determined only in a plenary trial. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980].)
The undisputed facts establish defendants’ entitlement to summary judgment of dismissal as a matter of law under the UCC. The facts which are alleged to be disputed, i.e., whether the certificates were properly presented, and whether Ms. Samuels was mentally competent to sign the transmittal form requesting replacement securities, are irrelevant to a determination of defendants’ obligation to transfer ownership of the securities to plaintiff as Ms. Samuels’ transferee. Accordingly, defendants’ motion for summary judgment dismissing the complaint is granted and plaintiffs cross motion for summary judgment is denied.

. Jack S. Dweek, counsel for plaintiff in this action, has presented his affirmation in support of the cross motion and in opposition to defendants’ motion noting his “personal knowledge of the facts.” Given the substance of his affirmation, he is clearly a substantive witness, and, as such, as defense counsel has alleged, has violated DR 5-102 of the Code of Professional Responsibility (22 NYCRR 1200.21) in representing plaintiff in this action.

. Article 8 does not determine whether a property interest in a security has been “acquired under other law, such as the law of gifts,” but the rules of UCC article 8 do “determine whether the issuer is obligated to recognize the rights that a third party, such as a transferee, may acquire under other law.” (UCC 8-302, Comment 2 [Rights of purchaser].)

. The elements of a valid inter vivos gift include delivery, acceptance and an intent to make a present irrevocable transfer evidenced by a divestiture of the donor’s dominion and control over the property. (See, Gruen v Gruen, 68 NY2d 48 [1986].) Plaintiff contends that Ms. Samuels retained a life estate in the proceeds of the stock, while conveying remainder title sometime before 1995.While the retention of a life estate does not preclude the enforceability of an inter vivos gift of a remainder interest (id.), Ms. Samuels’ failure to endorse the certificates and her subsequent action in replacing those certificates as lost, raise questions regarding her intention that the transfer be irrevocable. (See Matter of Monks, 247 AD2d 922 [4th Dept 1998].)

. The cases cited by plaintiff to support her position that the defendants were obligated to recognize plaintiff as the recipient of a valid gift and therefore the true owner of the certificates actually deal with the validity of inter vivos gifts, particularly where there is no physical delivery, or, in the case of stock, where there is no registration of transfer, rather than the obligation of an issuer of stock certificates to register transfer upon presentation of securities. (See, e.g., Gruen v Gruen, 68 NY2d 48 [1986]; Matter of Carroll, 100 AD2d 337 [2d Dept 1984]; Matter of Cristo, 86 AD2d 700 [3d Dept 1982]; Matter of Ferguson, 54 AD2d 982 [2d Dept 1976].)