WYNDHAM, INC., a corporation of the State of Delaware, Plaintiff, v. WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Executor of the Last Will and Testament of Charles B. Holladay, Deceased, Defendant.

(*May* 28, 1948.)

PEARSON, J., sitting.

*Arthur G. Logan* (of the firm of Logan, Duffy and Boggs) for plaintiff.

*Robert H. Richards, Jr.,* (of the firm of Richards, Layton and Finger) for defendant.

Superior Court for New Castle County, No. 112, January Term, 1947.

PEARSON, J.:

The plaintiff corporation was organized in 1924 by the decedent, Charles B. Holladay. It may be characterized as a personal holding company. Decedent was its president and a director from its beginning until his death in January 1946. The other officers and directors have consisted of members of his family. Plaintiff asserts that this is an

action for restitution arising out of a transaction by which the decedent caused his own obligation for short sales of stock to be paid by plaintiff.

During December 1931, decedent sold short a total of 3900 shares of duPont stock (common stock of E. I. duPont deNemours & Co.) through the brokerage firm of Laird, Bissell and Meeds. These sales were shown in a "short account" carried with the brokers in decedent's name until December 1945, when it was closed. For each short sale, the account was charged with the number of shares sold (indicating a liability to the brokers to return that number of shares or their market value in money at the time of liquidation of the liability), and credited with the proceeds of sale. From time to time, when dividends were paid on duPont stock, this account was charged with the amount of dividends payable on the number of shares which had been sold short, and which had not been returned to the brokers. The total number sold short was reduced by purchases by decedent of 1200 shares during 1934, 1935 and 1936, and by decedent's delivery to the broker of 1000 shares in 1944. On December 14, 1945, the account showed that he was charged with 1700 shares "short". On that day, as president of plaintiff, decedent directed the brokers to transfer the short position of 1700 shares from the short account in his name to a short account in plaintiff's name; and also to charge the latter account in the amount of $115,005, representing accumulated short dividends with respect to the 1700 shares, and to credit the account with $89,376.40, representing the proceeds of the short sales of the 1700 shares. The brokers did this, with the result that whereas decedent's short account had previously shown a liability for 1700 shares in the net amount of $25,628.60 ($115,005 minus $89,376.40); afterwards, his account was closed, and the liability appeared in a short account in plaintiff's name.

At decedent's direction, the following entries with respect to the transaction were made in plaintiff's journal:
"1945

| | | | |
|---|---|---|---|
| Dec. 14 as of | C. B. Holladay | *89,376.40 | |
| | Du Pont Common— Short * | | 89,376.40 |
| 12.16.31 | To record short position of 1,700 shares du Pont Common sold on 12/16 and 12/17/1931 and carried by C. B. Holladay for Wyndham, Inc. | | |
| Dec. 14 | Du Pont Common— Short * | 115,005.00 | |
| | C. B. Holladay* | | 115,005.00 |
| | To reimburse C. B. Holladay for accumulated short dividends paid on 1,700 shares Du Pont from December 1931 to date at $67.65 per share." | | |

On the same day, December 14, 1945, decedent delivered on behalf of plaintiff certificates for 1700 shares of duPont stock to the brokers, and the short account in plaintiff's name was closed by this delivery and by the transfer of a credit of $25,628.60 from another account of plaintiff with the brokers.

Plaintiff claims that the short account in decedent's name was a personal obligation of decedent; that it was paid with plaintiff's property, without consideration to plaintiff, and without the knowledge or consent of the direc-

tors, officers or shareholders of plaintiff, other than decedent; and that therefore, decedent's executor, the defendant, is liable to plaintiff.

Defendant denies any liability, contending that the proofs establish that decedent originally made the short sales of 1700 shares in his own name acting on behalf of plaintiff, and that therefore the liability represented by the short account was at all times an obligation of plaintiff; and further, that it appears that the 1700 shares delivered to the brokers on December 14, 1945 were the property of decedent, personally.

■ ■ Although the December 14, 1945 entries in plaintiff's journal indicate that the short sales of 1700 shares had been made on behalf of plaintiff, the evidence seems overwhelming that they were actually personal transactions of decedent. They were part of a series of transactions made in decedent's name and at his direction. The brokerage account remained in his name from 1931 to 1945. Decedent used his own property to reduce the short sales of shares from 3900 to 1700. There is no indication that any of the sales were segregated or treated differently from any other, prior to December 14, 1945. None of the other officers or directors had any knowledge that the short sales were on behalf of the corporation, nor did they learn of the December 14 transactions until February 18, 1946, after decedent's death. At the request of Wilmington Trust Company, Trustee, a shareholder of plaintiff, decedent had an audit made in 1944 of plaintiff's books of account. The audit purports to show, among other things, the assets and liabilities on December 31, 1943. Nowhere does it disclose anything concerning the short sales of 1700 shares. Although decedent managed the affairs of the corporation in many instances without consulting other officers, directors or shareholders, it does not appear that he was specifically

authorized in 1931 to make short sales on behalf of the corporation. By a resolution of the directors in 1935, he was granted broad powers, including the power to make short sales, but that cannot be deemed a ratification of short sales in 1931 about which the directors had no knowledge.

During December 1945, the directors, officers and shareholders of plaintiff were as follows:

Directors: Charles B. Holladay, Emma S. Holladay, Elizabeth H. Baker.

Officers: Charles B. Holladay, President, Elizabeth H. Baker, Secretary, A. Randolph Holladay, Treasurer.

Shareholders: Wilmington Trust Company, Trustee, 48 shares common, 13,965 shares preferred; Charles B. Holladay, 58 shares common, 35 shares preferred.

■ None of them, other than decedent, have consented to or approved the December 14 transactions. Granting that decedent was authorized to bind the corporation in transactions with the brokers and other third parties, such authorization did not constitute a warrant to apply corporate property for his own individual benefit. He was not the sole shareholder, and he was bound to observe the law relating to corporate ownership in dealing with plaintiff's property.

■ With respect to the 1700 shares which decedent delivered to the brokers on behalf of plaintiff on December 14, 1945, the record is clear that they were the property of plaintiff. Decedent himself so treated them at the time of the delivery. Dividends received on them previously were accounted for as belonging to plaintiff. The corporate books further corroborate this.

 From the facts, I conclude that decedent became liable to plaintiff by reason of the satisfaction of decedent's own obligation to the brokers out of plaintiff's property. Plaintiff has presented an appropriate claim to defendant, decedent's executor, and this has been rejected. Accordingly, a proper foundation has been laid for bringing the present action.

 Plaintiff is entitled to damages to compensate it for the loss it has sustained by decedent's acts. In general, the measure of damages for conversion is the value of the property at the time of conversion, with interest. *Vaughan and Cannon v. Webster,* 5 *Harr.* 256; *Russell v. Stoeckel,* 5 *Houst.* 464; *Stewart v. Bright,* 6 *Houst.* 344; *Boulden v. Gough,* 4 *Penn.* 48, 54 *A.* 693; *Gam v. Cordrey,* 4 *Penn.* 143, 53 *A.* 334; 2 *Woolley on Delaware Practice,* § 1521. However, this measure is not exclusive. Under some circumstances, it is recognized as inadequate to compensate the injured person for the financial detriment to him in consequence of the conversion. Thus, in cases such as the present, the measure of damages for the loss (as capital) of converted shares of stock of fluctuating value is the highest value from the time of conversion up to a reasonable time after the owner acquires knowledge of the conversion. Compare: *Cahall, Rec'r v. Burbage,* 14 *Del. Ch.* 55, 121 *A.* 646; *Upson v. Otis, (2 Cir.)* 155 *F.* 2d 606; *Restatement of the Law of Restitution,* § 151; *Fletcher's Cyclopedia of Corporations (Perm. Ed.),* § 5117. Interest from the date the highest value is reached should be included for the same reasons that interest is allowable from the time of conversion when the value is fixed as of that date. Values during a "reasonable time" after knowledge of the conversion are taken into consideration on the ground that the risk of fluctuations in the market should be borne by the wrongdoer, at least during a period sufficient under the particular circumstances for the injured person to inquire into his rights

and to replace the shares wrongfully taken from him. Compare: *Cahall, Rec'r v. Burbage, supra.*

Here, February 18, 1946, when knowledge of the conversion first came to any shareholder, officer or director other than decedent, is obviously to be treated as the time when the owner first acquired knowledge of the conversion. It appears from the evidence that the highest sale price of duPont stock on the New York Stock Exchange on that day was $198. Absent any evidence to the contrary, it will be assumed that from the date of conversion, December 14, 1945, to February 18, 1946, the sale price did not exceed $198. After February 18, the sale prices were less than $198 until March 25. Plaintiff has not shown that a period so long as to include March 25 was reasonably required in order to seek advice and to replace the shares. Accordingly, without fixing a precise limit of the "reasonable time" here, it is enough to say that the highest value from conversion to a reasonable time after knowledge of the conversion was $198 per share.

Plaintiff's damages are $336,600 (1700 shares at $198 per share) with interest at 6% from February 18, 1946; and also the sum of $25,628.60 (the net cash debit to plaintiff's account with the brokers) with interest at 6% from December 14, 1945.

A Judgment accordingly will be entered.