Arthur J. L. Hutchinson,
Plaintiff,

*vs.*

The Fish Engineering Corporation, a Delaware corporation, and Pacific Northwest Pipeline Corporation, a Delaware corporation, Doe One, Doe Two, Doe Three, Doe Four, Doe Five, and Doe Six,
Defendants.

*New Castle, February 19, 1963.*

*Herbert L. Cobin,* of Coxe, Booker, Walls & Cobin, Wilmington, and *Leonard Q. Meyberg,* of Los Angeles, for plaintiff.

*Arthur G. Connolly* and *Januar D. Bove, Jr.,* of Connolly, Bove & Lodge, Wilmington, for defendant, The Fish Engineering Corporation.

*John VanBrunt, Jr.,* of Killoran & VanBrunt, Wilmington, for defendant, Pacific Northwest Pipeline Corporation.

SEITZ, Chancellor : Plaintiff's claims are that the managing officers of defendant Fish Company took advantage of a confidential relationship purportedly existing between themselves and plaintiff and in effect defrauded him in an effort to obtain for Fish Company title to some six patents which allegedly belong to him. The relief primarily sought is rescission and a declaration that title is in plaintiff or, in the alternative, recovery of the reasonable value of each such patent. Plaintiff seeks as further relief an accounting both of damages purportedly suffered by plaintiff as the result of an alleged wrongful exercise of dominion and control by the two corporate defendants and of profits allegedly received by them. The defendant Pacific is joined because it is alleged to have knowingly participated profitably in the improper action taken by the defendant Fish Company.

At an earlier stage this court denied defendants' motion to dismiss the complaint on the grounds of laches or limitations. See *Hutchinson v. Fish Engineering Corp.*, 38 *Del.Ch.* 414, 153 *A.2d* 594; appeal dismissed, 39 *Del.Ch.* 215, 162 *A.2d* 722.

I now consider defendant Fish Company's motion for summary judgment based on the separate defense of laches. I also must consider defendant Pacific's separate motion for summary judgment based on the contention that as a matter of law none of the alleged improper conduct by which Fish Company obtained an interest in plaintiff's inventions is to be imputed to it. The disposition of these motions has been rendered extremely difficult because the prolix record with its disjointed and inconsistent narrative varied from the complaint and obscured the search to ascertain whether the facts material to the disposition of the motions were undisputed.

At the heart of the present controversy lies the question of the ownership of six patents developed at least in part by plaintiff during his employment in various capacities with Fish Company and issued in his name.[1] Three of these patents (the so-called (a), (b), and (c) patents) were assigned to the Fish Company, while the remaining three ((d), (e), and (f)) have never been assigned.

Plaintiff makes a broad claim in rather general terms that during the whole period of his employment by Fish Company he relied on the advice and assurances given him by his associates in the company who were its founders, directors, and managing officers. Plaintiff thus seeks to establish that a kind of confidential relationship existed between himself and these other persons which required them to deal fairly with him and not at arm's length. He claims that all of the actions of the defendants must be viewed as being colored by the existence of this relationship. Plaintiff says that whatever interest the defendants purportedly acquired in his inventions resulted from their knowingly abusing such relationship. In addition, he sets out specific instances of "fraud" with respect to each

---

1. One of these patents was issued in the names of two other persons as well as in plaintiff's name, but this fact is of no consequence in view of the conclusions here reached.

set of patents which are said to have caused him to convey to the defendants the interest they acquired therein. First, with respect to (a), (b), and (c), plaintiff claims that assignments of such patents were obtained from him initially by certain misrepresentations of law concerning his obligation to execute assignments to Fish Company as his employer. He further contends that he was lulled into inaction in protecting his legal rights in these patents by certain further assurances or promises by Fish Company which Fish Company never intended to perform. Thus, plaintiff now seeks rescission of these assignments. Next, with respect to (d), (e), and (f), plaintiff claims first that these inventions were used by the defendants though they had no rights whatever therein and secondly, in the alternative, that though defendants may have had certain rights in such inventions, they obtained such rights by making certain promises to plaintiff which they had no intention of performing. Also, plaintiff says that even if defendants intended to perform these promises, the agreement they made with him was unconscionable *per se* in view of the confidential relationship existing between the parties. Thus, under (d), (e), and (f) plaintiff seeks either a declaration of his rights or, in the alternative, rescission of the transactions whereby defendants acquired their purported rights.

I am persuaded after close examination of the record that any decision on the application of laches and limitations to these claims must be deferred until trial. It is presently disputed whether plaintiff had knowledge of his legal rights before April 1956. While Fish Company has pointed out certain areas where plaintiff ought to have known at an earlier time that defendants were taking a position contrary to the legal rights which he now claims he possessed, plaintiff raises genuine issues of fact as to whether his delay in asserting such rights resulted from his reliance on the assurances given him by Fish Company. Such reliance on his part would I think be relevant to the question of laches even in the absence of some special relationship between the parties.

The complaint in this suit was filed on February 2, 1959. Defendants contend that in April of 1956 plaintiff obtained full knowledge of the facts concerning his legal rights in all these inventions

including the purported abuse of any existing confidential relationship. Defendants claim, and plaintiff apparently concedes, that to the extent the Texas statute of limitations is applicable, the period is two years (*Vernon's Ann.Civ.St., Art.* 5526). Thus, defendants assert in effect that plaintiff's claims are stale.

In cases falling within the exclusive jurisdiction of this court, the Statute of Limitations otherwise applicable is but one factor to be considered in measuring the legal effect of the complainant's delay. It is to be considered in conjunction with the complainant's own conduct from the time he discovered the alleged wrong. *Bay Newfoundland Co. v. Wilson & Co.,* 24 *Del.Ch.* 30, 4 *A.2d* 668. Thus, the Texas statute is not to be considered as binding on this court in determining the availability of the remedy presently sought by plaintiff.

I am persuaded on the basis of the present record that a decision on this issue also must await the trial. The application of the statute cannot be determined here in the absence of a resolution of the factual issues pertinent to the defense of laches. If, as alleged by defendants, plaintiff knew of his purported legal rights from and after April 1956, it is also true on this record that defendants were aware on that date of plaintiff's claims in that respect. There is nothing to indicate that plaintiff thereafter acquiesced in the assertions of defendants as to the limited nature of his rights.

The record indicates that after the April 1956 confrontation between plaintiff and Fish Company's officers, plaintiff contacted an attorney who until his illness was in communication with Fish Company. Plaintiff's present attorney, Mr. Meyberg, thereafter corresponded with defendants and their attorneys and prepared the Notice of Rescission. Plaintiff later rejected a tender of royalties under Fish Company's version of one of the contracts in dispute. Thus, while the present situation may be one of lapse of time before the commencement of a suit, it is not on the present record one where defendants have clearly been prejudiced by plaintiff's inaction. If one assumes that plaintiff's Notice of Rescission was timely, there is no convincing evidence that defendants thereafter suffered such a

prejudicial change of position as should cause all relief to be denied to plaintiff for the alleged frauds. Thus, a decision on this issue will be deferred and defendant Fish's motion for summary judgment will be denied.

■ Next, I turn briefly to defendant Pacific's separate motion for summary judgment based on the contention that its sole connection with plaintiff's patents was that it bore the cost of testing the devices incorporating the inventions and then purchased the finished units either directly or indirectly from Fish Company. It claims that the undisputed facts demonstrate that at most it is chargeable with an unauthorized use of the inventions under a mistaken belief as to ownership. It contends therefore that such cause of action as might exist, presumably patent infringement, would not be cognizable in this court.

Defendant's argument as I understand it turns on whether Ray Fish and other Fish Company officers, in dealing with plaintiff with respect to the patents, are to be deemed as a matter of law as having acted solely on behalf of Fish Company and not in the interest of defendant Pacific. Plaintiff contends that Fish Company, Pacific, and all the Fish affiliates were mutually under the dominating influence of Ray Fish and that actions taken by him and others on behalf of these companies are binding on each of them respectively. Plaintiff claims that his inventions provided Pacific with an efficient and economical means of dehydrating gas for which no compensation other than his salary was paid to him. Thus, he contends that the alleged improper actions of Fish and of certain of his former associates were intended to benefit Pacific as well as the Fish Company and that their knowledge of such wrongs may be imputed to Pacific.

At this stage of the proceedings I am unable to find as a matter of law that the conduct of Fish and of plaintiff's associates in Fish Company is to be imputed solely to Fish Company and not to Pacific. I say this because there is considerable testimony in the record indicating a close relationship between these two entities. Moreover, there are statements by Ray Fish which tend to support plaintiff's view of Fish's pervasive influence or raise at a minimum a genuine

issue of fact in that respect. I cannot say at this stage, if the 1954 contract was obtained by fraud, that Pacific would not be chargeable with participation in the alleged wrongs, at least to the extent of having knowingly profited from the use of the inventions. Consequently, Pacific's separate motion for summary judgment is denied.

Present order on notice.