CHURCH OF RELIGIOUS SCIENCE, a California corporation, Plaintiff Below, Appellant,

v.

Benjamin FOX and Elco Corporation, a Delaware corporation, Defendants Below, Appellees.

Supreme Court of Delaware.

May 1, 1970.

George Tyler Coulson, and Lewis S. Black, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff below, appellant.

John P. Sinclair, of Potter, Anderson & Corroon, Wilmington, and Adelman & Lavine, Philadelphia, Pa., for defendants below, appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This is an appeal from summary judgment entered by the Court of Chancery in favor of the defendants on the issue of laches in this action for an accounting.

I.

The following determinative facts are uncontroverted on the record before us:

Benjamin Fox, defendant herein, was employed as general manager by Hugh H. Eby, Inc. (hereinafter "Eby") from 1943 to 1947. Eby was engaged in the production of electronic devices. During Fox's tenure, he was credited with the development of several new articles, including a certain new "spring binding post" for which Fox made a patent application and assigned it to Eby. All employees of Eby were obliged to assign inventions to Eby.

While ill at home early in 1946, Fox conceived the electrical connector here in controversy. He made a model of the item and applied for a patent in May 1946. A few weeks later, Fox showed the model of the connector to Frank Holmstrom, an officer, director, and 40% owner of Eby, hoping to interest Eby in its development; but Holmstrom was uninterested. Also in 1946, Fox showed the model to William Sharp, Eby sales manager, who similarly showed no interest.

In 1947, after Fox's relationship with Eby had terminated, he attempted to interest Bernard Offerman in the connector. He showed Offerman the model, but Offerman "didn't think too much of the idea or of the product" and "wasn't interested in doing anything about it." In 1950, Offerman and his associate, Jules Sussman, bought a controlling interest in Eby; and Offerman directed and managed the operation of the company until it was sold to the plaintiff herein, Church of Religious Science, in 1953.

Offerman "always assumed" that Fox's connector "had been developed while he was still working for the Eby Company." Inquiry was made by Offerman of Eby employees who "were there while Fox was there"; and, from the results of such investigations, Offerman "assumed" and "drew inferences" that Fox developed the connector during his employment by Eby. Offerman often considered bringing suit on behalf of Eby against Fox from the time he took over the control of Eby until he sold his interest in the company. He consulted with other officers and employees of Eby, from time to time, about suing Fox; and, specifically, he consulted Eby's attorney, Thomas Mullaney (also a long-time Eby officer and director) about legal action against Fox. Investigations of Fox's development ' of the connector and Eby's rights therein were carried on by Eby personnel from time to time during Offerman's administration of the company. Offerman "believed to this day * that the Varicon belonged to Eby"; and Eby's at-

* The day of his deposition in this litigation.

torney was prepared to institute an action against Fox. Nevertheless, Eby failed to act.

In explanation of Eby's failure to take action against Fox during the period 1950 to 1953, Offerman testified that he had never sued anyone and that he had neither the time nor the patience to engage in litigation. Sussman, joint owner of Eby with Offerman, testified that Offerman was "the boss" during their control of the company; and that he, Sussman, had no interest in suing Fox in the period of their operation of the company because he did not think that the type of connector here involved had any future.

The connector, known as the Varicon, found public acceptance in 1955, two years after it came on the market. It was developed by Fox through the defendant Elco Corporation (hereinafter "Elco"), a Delaware corporation formed by him. Elco became a publicly owned corporation in 1954. By the time this suit was brought in 1966, approximately 78% of Elco's stock was in the hands of the public; it had expended $6.8 million on engineering, development, and advertising for the exploitation of the connector; and sales had grown from a modest beginning in 1953 to $2.5 million in 1960 and to more than $14 million in 1966.

Neither Eby nor its successor in interest, the plaintiff herein, took any action to assert a claim to the connector here involved until this suit was instituted in 1966. Then, this suit was brought for an accounting based upon an alleged misappropriation by Fox of the connector and an alleged wrongful exploitation of the invention by Fox and Elco for their own benefit. In the meanwhile, Holmstrom died in 1959; and other material witnesses died in the intervening years.

Court of Chancery that the defendants are entitled to summary judgment on the ground of laches. The defendants have established with sufficient clarity, in our opinion, that there is no genuine issue of material fact as to laches. 6 Moore's Federal Practice (2d Ed.) ¶ 56.17(38).

It must be concluded from the above facts that, during the period 1946 to 1953, circumstances existed which reasonably put Eby on notice as to its possible interest in, and claim to, the connector. Eby was under a duty to assert that interest and claim seasonably; and neither it nor its successor was entitled to stand by, as they did for many years, until seemingly more positive proof of such interest and claim happened to present itself. Compare Cooch v. Grier, 30 Del.Ch. 255, 59 A.2d 282 (1948).

Since the early 1950's at least, Eby was presumptively, if not actually, aware of the rights and the claim that plaintiff now asserts. Knowledge of the activities of Fox and Elco, as to which complaint is now made, are to be imputed to Eby and the plaintiff. Also, the circumstances, of which Eby unquestionably was cognizant from 1946 on, were sufficient to impose upon Eby and its successor the duty of reasonable diligence in establishing the facts and prosecuting the claim the plaintiff now asserts. The plaintiff failed to show any compliance whatsoever with that duty of reasonable diligence. For an analogous rule of reasonable diligence in the application of statutes of limitations, compare Layton v. Allen, Del.Supr., 246 A.2d 794 (1968); Pomilio v. Caserta, Del. Supr., 215 A.2d 924 (1965), and Giordano v. Czerwinski, Del.Supr., 216 A.2d 874 (1966). See generally 27 Am.Jur.(2d) "Equity" § 167.

## II.

Upon the above facts, as to which there is no genuine issue, we agree with the

## III.

The plaintiff makes several unpersuasive arguments in its attempt to avoid the fatal

effect upon its claim of the lapse of so many years:

■ 1) The plaintiff contends that, ordinarily, summary judgment is not granted on the defense of laches, citing Bush v. Hillman Land Co., 22 Del.Ch. 374, 2 A.2d 133 (1938); Elster v. American Airlines, 36 Del.Ch. 213, 128 A.2d 801 (1957); H. & S. Manufacturing Co. v. Benjamin F. Rich Co., 39 Del.Ch. 380, 164 A.2d 447 (1960), and Hutchinson v. Fish Engineering Corporation, 41 Del.Ch. 134, 189 A.2d 664 (1963). In none of the cited cases, however, was there such clear showing of the absence of a genuine issue of material fact upon the issue of laches as exists in the instant case.

■ 2) The plaintiff contends that the Chancery Court erred in finding that Fox discharged his fiduciary duty to Eby by showing the model of the connector to Holmstrom and Sharp in 1946. It is argued that Fox failed to make a disclosure sufficient to fulfill his obligation as a fiduciary in that he did not show Holmstrom or Sharp his patent application for the connector.

The plaintiff misconstrues the rationale of the decision below. The Chancery Court ruled that the issue of fiduciary obligation was immaterial because Fox's disclosures to Holmstrom and Sharp, and the subsequent knowledge of Eby's officers, were sufficient to put Eby on notice of a possible claim to the invention almost 20 years before the commencement of this action, thus raising the bar of laches. We agree that it was unnecessary for the Trial Court to reach the question of the fiduciary relationship of Fox and Eby in determining that the plaintiff was barred from prosecuting this action so many years after Eby had knowledge of circumstances such as to put upon it the duty of reasonable diligence in perfecting and prosecuting its claim. That duty of reasonable diligence included, we think, the duty of making reasonable inquiry as to Fox's patent application upon disclosure of his model. There is no evidence that any such inquiry was made of Fox, or of the United States Patent Office, or otherwise.

■ 3) The plaintiff contends that the Chancery Court erred in finding, upon the above facts, that Eby had a reasonable basis for believing it had an enforceable claim against Fox. Here we deal in inferences and deductions. We hold that the record contains ample evidence upon which to base the conclusions of the Chancery Court in this regard; and we do not find its inferences and deductions clearly erroneous. Accordingly, we will not disturb them. Lank v. Steiner, Del.Supr., 224 A.2d 242 (1966).

■ 4) The plaintiff contends that the evidence with respect to laches is not uncontradicted. We have examined the several inconsistencies in the evidence to which the plaintiff points in support of this contention. No genuine issue of material fact is made to appear, however, as to those facts deemed dispositive of the issue of laches.

In this connection, the plaintiff relies upon answers by Fox to certain interrogatories in Methode Electronics, Inc. v. Elco Corporation (3 Cir.) 385 F.2d 138 (1967), a declaratory judgment action seeking a declaration of the invalidity of Fox's patents on the Varicon. The plaintiff contends that Fox's testimony in the instant case contradicts his interrogatory answers in *Methode*; that an issue of fact is thus raised precluding summary judgment. We are of the opinion that the inconsistency here asserted does not rise to the level of a genuine issue of material fact sufficient to foreclose the summary judgment.

■ 5) The plaintiff contends that the Chancery Court erred in finding laches "in the face of Fox's fraud." It is our opinion that, in view of Fox's undisputed disclosures to officers of Eby in 1946, there is absent from the record of this case the kind of factual situation required to support

the proposition here tendered. A fraudulent concealment will suspend the bar of time only until the plaintiff's rights have been discovered or could have been discovered by the exercise of reasonable diligence. Giordano v. Czerwinski, Del.Supr., 216 A.2d 874 (1966). As we have held, Eby knew or by the exercise of reasonable diligence could have known of the rights it here asserts, almost two decades before the instant action was commenced. Assuming, *arguendo,* a fraudulent concealment by Fox at the outset, the defendants would be deprived of the benefit of the defense of laches only so long as the rule of reasonable diligence protected the plaintiff. As we have seen, that protection ended many years ago.

Accordingly, the judgment below is affirmed.