Gertrude L. WELLER, Plaintiff,

v.

AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY, a New York corpora-
tion, and General Electric Company, a New
York corporation, Defendants and Third-
Party Plaintiffs,

v.

MERRILL LYNCH PIERCE FENNER &
SMITH, INCORPORATED, a Delaware
corporation, Third-Party Defendant.

Court of Chancery of Delaware,
New Castle.

March 16, 1972.

Reargument Denied April 5, 1972.

Courtney H. Cummings, Jr., of Killoran & Van Brunt, Wilmington, for plaintiff.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for defendants and third party plaintiffs.

Arthur J. Sullivan, of Morris, James, Hitchens & Williams, Wilmington, for third party defendant.

MARVEL, Vice Chancellor:

Plaintiff seeks the entry of a judgment against two corporations, namely American Telephone and Telegraph Company and General Electric Company, based on her claim for injuries sustained by her as a result of the alleged unauthorized registration of stock owned by her in each such company. Separate suits were filed against such issuers. However, the cases having been consolidated for trial purposes, this opinion will be filed in each case.

At the time of the acts complained of plaintiff was the registered holder of 500 shares of common stock of American Telephone and Telegraph Company and 100 shares of common stock of General Electric. Later, the shares of the latter company were split two for one.

In 1968, Gertrude L. Weller, a 94 year old widow, was invited to live in the home of Mr. and Mrs. Kenneth Jumper. This change of residence came about because the plaintiff had known Mrs. Jumper for many years and was also acquainted with Mr. Jumper, who had performed various helpful services for her in the past. Because of her lonely circumstances and advanced age she was more than delighted to accept the Jumpers' proposal. As a token of her appreciation for their apparently unselfish gesture Mrs. Weller, after moving in with them, made a gift of 100 shares of American Telephone and Telegraph stock to Mr. Jumper.

Thereafter, because of her age and poor health, plaintiff gradually surrendered more and more responsibility concerning the details of her business affairs to Mr. Jumper. Thus, she acquiesced when he took upon himself to open her mail, being reassured by him on numerous occasions that he was sending her stock dividend checks and other income receipts to her bank. During this period Mrs. Weller evinced complete trust in the Jumpers notwithstanding momentary worries over the fact that her mail was being opened by Mr. Jumper and that she was not actually being shown the income checks which she had received in the mail. However, she was easily convinced that there was nothing to worry about.

In February, 1970, after having moved to her nephew's to live, following disclosure to some extent of Mr. Jumper's actual nature, Mrs. Weller ascertained that for over a period of almost two years she had been systematically defrauded by Mr Jumper. In other words she became aware for the first time of the fact that Kenneth Jumper had used a form containing her signature for the purpose of opening a joint trading account with a stockbroker, namely the third party defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., and that Mr. Jumper thereafter had apparently forged her name to the stock certificates here involved for the purpose of selling them on the market.

The trial evidence is to the effect that Mr. Jumper had not only forged plaintiff's name to plaintiff's stock certificates but had also closed out her savings account and terminated her checking account by means of a forged signature. Needless to say, the income checks which Mr. Jumper had removed from Mrs. Weller's mail had also been diverted to his own use.

Plaintiff thereupon notified the defendants American Telephone and Telegraph Company and General Electric Company on March 4, 1970 that the stock certificates representing her investments in such companies had been sold by means of forged signatures and requested the issuance to her of replacement certificates. The defendants having declined to issue such certificates as requested, this action ensued,

the complaint naming as defendants the issuers of the certificates in question. Merrill Lynch was later joined as a third party defendant in its capacity as the broker which had guaranteed Mrs. Weller's signature.

The third party plaintiffs, American Telephone and Telegraph Company and General Electric Company, having moved for summary judgment against the third party defendant Merrill Lynch on the ground that in the event of the establishment of the alleged forgery upon which plaintiff relies for recovery, such party will be ultimately liable for plaintiff's injuries as a guarantor of her signature under § 8–312(3) of the Uniform Commercial Code,[1] an order granting such motion was entered on December 13, 1971.

■ At trial, plaintiff introduced expert testimony to the effect that the signatures on the stock certificates in question were not those of Mrs. Weller, which evidence was not controverted. And I am satisfied from a consideration of all of the evidence of record that during the period from May 1 to July 1, 1968, plaintiff's signature was in fact forged on the certificates in issue by Mr. Jumper after he had improperly obtained access to her bank deposit box. Merrill Lynch now argues, however, that Mrs. Weller is barred from the recovery she seeks because she admittedly signed[2] a form which enabled Mr. Jumper to open a joint trading account in Mrs. Weller's as well as his name at Merrill Lynch. The form for the opening of such joint account contained the following provision:

"With respect to our joint account with right of survivorship we confirm that:

1. In all matters pertaining to the account you may act with orders or instructions from either of us."

The third party defendant Merrill Lynch contends, first of all, that inasmuch as such

agreement gave Mr. Jumper the right to authorize the sale of plaintiff's securities, such defendant was justified in its act of guaranteeing Mrs. Weller's apparent signature.

In my opinion, such contention is untenable, first because Mrs. Weller cannot by any reasonable interpretation of the document relied on by Merrill Lynch be deemed to have agreed in advance to Mr. Jumper's forgeries; secondly, even if it were to be assumed that the defendant Merrill Lynch can be said to have acted reasonably pursuant to Mr. Jumper's instructions, there is no language in the trading agreement here in issue authorizing it successfully to guarantee a forged signature as genuine.

■ In seeking to obtain the entry of a judgment against American Telephone and Telegraph Company and General Electric and in the end to obtain relief from Merrill Lynch, plaintiff relies, inter alia, on § 8–106 of the Uniform Commercial Code which provides as follows:

"The validity of a security and the rights and duties of the issuer with respect to registration of transfer are governed by the law (including the conflict of laws rules) of the jurisdiction of organization of the issuer."

Both of the corporate issuers in this action are organized under the laws of the State of New York. Accordingly, New York law must be here applied although it appears that the texts of the Delaware and New York Uniform Commercial Code are basically the same. However, as will be noted later, the section governing the form of relief to be granted a stockholder who has succeeded in obtaining judgment against the issuer of a corporate security has been interpreted in New York but not in Delaware.

---

1. 5A Del.C. §§ 8–301 to 8–406.

2. The authenticity of such signature of Mrs. Weller's is undisputed, although

there is some question as to what means Mr. Jumper employed to cause it to be furnished.

§ 8–404(2) of the Uniform Commercial Code provides that where an issuer has registered a transfer of a security in the name of a person not entitled to it, such issuer on demand must deliver a like security to the true owner, provided, inter alia, the owner has acted pursuant to subsection (1) of the section which follows. § 8–404(2) (b). Subsection (1) of the following section provides that the owner of such a security must notify the issuer of the wrongful taking complained of within a reasonable time after he has notice of a lost or wrongfully taken certificate, Section 8–405(1).

Defendants argue that in the case at bar plaintiff failed to notify the issuers within a "reasonable time", as such phrase is defined in the statute. It contends that plaintiff should have known some twenty-two months before she notified the issuing corporations that Mr. Jumper had converted her stock certificates. Defendants go on to point out that had plaintiff made a casual examination of her bank book or bank statement, it would have been brought to her attention that dividend checks accruing on the shares here in issue were not being deposited to her credit.

In order to determine whether or not Mrs. Weller notified the issuer within a "reasonable time" after she had "noticed" that her shares had been transferred as a result of forgery it is necessary to determine the meaning of these two phrases as employed in the statute.

The definition section of Article 8 provides inter alia: "In addition Article 1 contains general definitions and principles of construction and interpretation applicable throughout this Article." Section 8–102 (6). Article 1, provides that a person has "notice" of a fact when he has actual knowledge of it, has received notification, or " * * * from all the facts and circumstances known to him at the time in question he has reason to know that it exists." Section 1–201(25). Article 1 also provides: "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." Section 1–204(2).

In the case at bar we are concerned with the affairs of a 94 year old woman, who while a guest in another's home, was persuaded to allow one of her hosts, whom she trusted, to handle her affairs. I am accordingly satisfied that Mrs. Weller, a lonely and trusting person of advanced years and of infirm mind and body, had every reasonable right to trust a family which took her in and which she had known intimately before she moved into its home. Furthermore, in light of her reliance on the perpetrator of the acts which deprived her of title to her securities and her own age and decrepitude, she having among other things broken a hip while at the Jumpers, I do not think Mrs. Weller can be charged with unreasonable action in not checking her accounts from time to time. I therefore conclude in view of all of the surrounding circumstances that Mrs. Weller did not have the required statutory notice of Mr. Jumper's dishonesty until February 19 or 20, 1970, and that she thereafter notified the issuers of her stolen securities within a reasonable time.

■ Defendants also argue that plaintiff is barred by the doctrine of laches. However, having already held that there was no unreasonable delay on Mrs. Weller's part, I find the doctrine of laches inapposite. See Church of Religious Science v. Fox, Del.Supr., 266 A.2d 881. Accordingly, I am of the opinion that having under the circumstances of record acted properly and in timely manner pursuant to Section 8–405 (1), plaintiff is entitled to a judgment holding defendants American Telephone and Telegraph Company and General Electric Corporation liable to her pursuant to § 8–404 of the Code. Finally, Merrill Lynch as guarantor carries the ultimate responsibility of making good plaintiff's loss in accordance with this Court's prior order herein dated December 13, 1971.

■ Plaintiff next contends that she has the right to elect to receive a cash recovery

in lieu of the issuance to her of shares of stock under § 8–404 of the Uniform Commercial Code, reliance being placed on Wyndham, Inc. v. Wilmington Trust Co., 44 Del. 324, 5 Del.Super. 324, 59 A.2d 456, a case decided long before the enactment of the Code. In support of her contentions plaintiff also cites the Delaware study comment annexed to 5A Del.C. § 8–404, which reads:

"The text of § 8–404(2) expressly recognizes the right of the registered owner of the security to obtain a new security from the issuer in those situations enumerated in § 8–404(2) (a), (b) & (c). The draftsmen's official comments to this section note that the case law has also recognized the right to elect between an equitable action to compel issue of a new security and an action for damages."

Plaintiff fails to note, however, that it is New York law which is to be applied here, and that although the Delaware and New York statutes appear to be identical, it is the statutory construction applied in New York which applies here. The New York official comment as to an election of remedies is to the effect that:

"Such election of remedies is no longer available and the owner is now required to take a new security except where an overissue would result and a similar security is not reasonably available for purchase."

There being no contention that the issuance of substitute certificates to plaintiff would result in an overissue of stock in this case, plaintiff's relief must be limited to the recovery by her of new certificates. See Scovenna v. American Telephone and Telegraph Company and General Electric Company, 54 Misc.2d 74, 281 N.Y.S.2d 854, in which such limitation in recovery is recognized but not applied in a cause of action antedating the adoption of the Uniform Commercial Code in New York.

Accordingly, plaintiff is entitled to the entry of an order providing for the issuance

to her of 500 shares of American Telephone and Telegraph Company common stock together with accrued and unpaid dividends, as well as 200 shares of General Electric Company common stock together with accrued and unpaid dividends, summary judgment having been earlier granted to the defendants American Telephone and Telegraph Company and General Electric Company on their claim against the third party defendant Merrill Lynch, Pierce, Fenner and Smith, Incorporated on the basis of the latter's guarantee of Mrs. Weller's signature.

Orders on notice.

## ON REARGUMENT

The third-party defendant Merrill Lynch, Pierce, Fenner and Smith, Incorporated, has moved for reargument under Rule 39 (f) of the Court's opinion of March 16, 1972, or, in the alternative, for an order under Rule 59(e), Del.C.Ann., altering or amending such opinion on the ground that the Court failed to make a finding as to whether or not the proceeds or any part of the proceeds of the sale of Mrs. Weller's shares of stock here in issue were received by her.

The trial transcript of the testimony of the expert witness called by plaintiff clearly supports a finding that Mrs. Weller's signature was forged on the broker's checks. And I am of the opinion from a consideration of such fact as well as of all of the other facts and circumstances disclosed at the trial of these cases that Mrs. Weller did not receive any of the proceeds derived from the cashing of such checks but rather that such funds went directly to Mr. Jumper for his personal use.

The Court has already found in its March 16 opinion that in authorizing the opening of a joint trading account with Mr. Jumper at Merrill Lynch plaintiff did not authorize or condone forgery on the part of Jumper

and is not estopped to assert her present claims because of his dishonesty.

The pending motions of the third party defendant are denied, and appropriate orders may be submitted on notice.